IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Billy Tedder,<br><br>    Plaintiff,<br><br>v.<br><br>Sgt. Johnson; Margrett Bell; Warden Anthony Padula; Director John Ozmint,<br><br>    Defendants. | Case No. 8:09-cv-3067-JMC-JDA<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

This matter is before the Court on a motion for summary judgment filed by Defendant Sgt. Johnson ("Johnson"). [Doc. 48.] Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and to submit findings and recommendations to the District Court.

Plaintiff's Complaint was filed on November 24, 2009, alleging physical abuse and excessive force. [Doc. 1.] On June 22, 2010, Defendants filed a motion for summary judgment. [Doc. 16.] At a hearing on August 25, 2010, counsel was appointed for Plaintiff when the Court learned Plaintiff could not read or write. [Doc. 28.] On December 1, 2010, after Defendants' motion for summary judgment was fully briefed [Docs. 32, 33, 37-1], Plaintiff moved to file an Amended Complaint, which names Johnson as the only defendant and alleges Johnson used physical force against Plaintiff in a manner constituting cruel and unusual punishment [Doc. 38-1]. The Court granted Plaintiff's motion on December 22,

2010 and found as moot Defendants' motion for summary judgment.[1] [Doc. 40.] On April 19, 2011, Johnson renewed his motion for summary judgment. [Doc. 48.] On June 1, 2011, Plaintiff filed a response in opposition to the motion for summary judgment. [Doc. 50.] Johnson filed a reply on June 13, 2011. [Doc. 51.] Accordingly, Johnson's motion is now ripe for review.

## **BACKGROUND**[2]

At all times relevant to this action, Plaintiff was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Lee Correctional Institution ("LCI"). [*See* Doc. 38-1 ¶¶ 1.] Plaintiff has a seizure disorder and takes several medications throughout the day for his disorder. [*Id.* ¶¶ 8–9.] Due to his condition, Plaintiff feels dizzy two to three times a day; he was issued a cane to assist him in standing and keeping his balance and a prescription allowing him to sleep on the bottom bunk, and he was allowed to sit or lie down if he felt dizzy or felt a seizure coming on. [*Id.* ¶¶ 11–12.] Further, Plaintiff had permission from Lt. Anthony Graham ("Graham") to leave the mess hall directly after eating his meal and go directly to medical to take his medications. [*Id.* ¶ 13.] If he does

---

[1] Because the Amended Complaint superseded the original Complaint, the Court recommends dismissing Defendants Margrett Bell, Warden Anthony Padula, and Director John Ozmint from this action as they were not named as defendants in the Amended Complaint. *See Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001) (stating that "an amended pleading ordinarily supersedes the original and renders it of no legal effect" (citation omitted)); *Hall v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, 2011 WL 4014315, at *1 (W.D.N.C. June 21, 2011) (citing *Colin v. Marconi Commerce Sys. Emps.' Ret. Plan*, 335 F. Supp. 2d 590, 614 (M.D.N.C. 2004); *Turner v. Kight*, 192 F. Supp. 2d 391, 397 (D. Md. 2002)) (denying as moot the defendants' motions to dismiss because the second amended complaint rendered moot the defendants' pending motions to dismiss, which were related to the superseded complaint); *McCoy v. City of Columbia*, 2010 WL 3447476, at *1–2 (D.S.C. Aug. 31, 2010) (adopting the magistrate judge's report and recommendation to the extent it recommended that the motion to dismiss be found as moot because the amended complaint superseded the original complaint and rendered any attack upon it moot).

[2] The following background was constructed from the allegations contained in Plaintiff's Amended Complaint, Docket Entry 38-1.

2

not take his medication with food or close to the time he eats, Plaintiff will "violently vomit wherever he is and everywhere within that vicinity." [*Id.* ¶ 14.]

On August 28, 2009, Plaintiff finished supper and proceeded from the mess hall to the Plaza Gate to go to the pill line at medical and get his pills. [*Id.* ¶ 15.] As Plaintiff left the mess hall, Graham instructed Plaintiff to go to the Plaza Gate to get his medications, and Graham stated he would radio Johnson and Johnson would let Plaintiff through to get his medicine. [*Id.* ¶ 17.] Plaintiff and Graham had been following this procedure for the past six months. [*Id.*]

When Plaintiff approached, Johnson began harassing Plaintiff and making racist remarks towards Plaintiff; this happened in front of two female corrections officers near the gate. [*See id.* ¶¶ 21–22.] The gate was not Johnson's normal duty station [*id.* ¶ 21], and on previous occasions, Johnson had stopped Plaintiff from going to the pill line until Plaintiff showed him his pass to go or had a lieutenant call Johnson on the radio to remind him Plaintiff needed to go to the pill line [*id.* ¶ 20]. On this occasion, Johnson appeared angry and aggressive and told Plaintiff to go back to his unit. [*Id.* ¶ 22.] Plaintiff told Johnson he had to go to the pill line and that Graham was going to call Johnson on the radio. [*Id.* ¶ 23.] At that moment, Graham came through on Johnson's radio and said, "Let Billy Tedder through." [*Id.* ¶ 24.] One of the female officers moved to open the gate [*id.* ¶ 24], but Johnson shouted at Plaintiff that he was not coming through the gate and ordered him to return to his dorm [*id.* ¶¶ 25–27].

Plaintiff told Johnson he could not make it back to the dorm and was going to lean on the wall until he could make it back. [*Id.* ¶ 27.] Johnson then came aggressively toward Plaintiff. [*Id.* ¶ 29.] Johnson yelled at Plaintiff and shoved Plaintiff's nose with his finger;

Plaintiff turned away from Johnson and asked why he could not go to the pill line when others were there from his unit. [*Id.* ¶¶ 30–31.] Johnson then aimed a can of "Top Cop," a chemical munition, at Plaintiff, and Plaintiff turned away to avoid being sprayed and called for help. [*Id.* ¶¶ 32–33.] Defendant Johnson then allegedly sprayed Plaintiff in the face with the Top Cop at close range, causing Plaintiff to have watery eyes and to sneeze, cough, and vomit. [*Id.* ¶ 35.] Next, Johnson grabbed Plaintiff by the back of his shirt near his neck, shoved him into the wall, and then took him to the ground. [*Id.* ¶ 36.] Johnson laughed while Plaintiff coughed and gasped for air, and Johnson put his knee in Plaintiff's back when he grabbed Plaintiff's arms to handcuff him. [*Id.* ¶¶ 37–38.] Then Johnson pulled Plaintiff to his feet by the handcuffs; Plaintiff cursed at Johnson and asked him why he sprayed Plaintiff. [*Id.* ¶ 39.] Major Dean asked what was happening and why someone had sprayed Plaintiff, then told Johnson to take Plaintiff inside, uncuff him, and let him clean up. [*Id.* ¶ 40.]

Since this incident, Plaintiff alleges he has had more problems with his asthma, now uses twice the amount of inhalers, and has lost some sense of taste and smell. [*Id.* ¶¶ 45–46.] Further, Plaintiff alleges Johnson's original incident report did not mention that Plaintiff threatened Johnson with a cane, but Johnson amended the report to assert Plaintiff threatened him with a cane. [Id. ¶¶ 47–48.] Plaintiff contends he has exhausted all administrative remedies available to him and has been informed by an SCDC official that he has exhausted his administrative remedies. [*Id.* ¶ 49.] Plaintiff seeks compensatory and punitive damages, as well as attorney's fees and costs, a jury trial, and such other relief as the Court sees fit. [*Id.* at 8.]

4

## APPLICABLE LAW

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a

State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all

6

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

>   (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Johnson contends he is entitled to summary judgment because Plaintiff failed to exhaust administrative remedies prior to filing this action. [Doc. 48-1 at 4–5.] Upon review, the Court agrees.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted).

Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate

8

suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to

the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue). While prison wardens must ensure that assistance is available for inmates who are illiterate, an illiterate inmate must have asked for and been refused assistance in pursuing his administrative remedies before his illiteracy may excuse his failure to exhaust. *Billups v. Ozmint*, 2010 WL 4386949, at *3 (D.S.C. Sept. 30, 2010) (quoting 28 C.F.R. § 542.16(b)) (citing *Ramos v. Smith*, 187 F. App'x 152, 154 (3d Cir. 2006)), *report and recommendation adopted by* 2010 WL 4386948 (D.S.C. Oct. 29, 2010).

With respect to this case, the record reflects a SCDC inmate may not grieve an incident that results in a disciplinary charge; however, an inmate has fifteen days to grieve the incident after resolution of the disciplinary charge. [Doc. 48-8 ¶ 4.] Grievance records indicate that, on September 3, 2009, Plaintiff filed grievance 2532-09 regarding Johnson's alleged use of force against him. [*Id.* ¶ 5; Doc. 48-9 (grievance 2532-09).] The grievance was returned unprocessed because Plaintiff's allegations were the basis of a disciplinary charge against him that had not been resolved. [Doc. 48-8 ¶¶ 5–6; Doc. 48-9.] The grievance records indicate Plaintiff did not refile the grievance after resolution of the disciplinary charge. [Doc. 48-8 ¶ 6.]

10

First, Plaintiff argues that, because Plaintiff cannot read or write and SCDC made no affirmative effort to assist him in filing a grievance, Plaintiff had no access to the grievance system. [Doc. 50-1 at 16–18; *see* Doc. 38-1 ¶ 7 (alleging that, although SCDC records indicate he completed eighth grade, Plaintiff attended school until he completed fourth grade and started fifth grade, and he cannot read or write).] Plaintiff's assertion that administrative remedies were not available is contradicted by record evidence demonstrating Plaintiff repeatedly utilized the grievance process. [*See, e.g.*, Doc. 48-11 ¶ 4; Doc. 48-12.] Therefore, Plaintiff has failed to demonstrate administrative remedies were unavailable to him.

Next, Plaintiff argues his original grievance was filled out by another inmate, no one assisted Plaintiff in understanding his unprocessed grievance, and a SCDC employee told him the grievance process was "done," which demonstrates a genuine issue of material fact remains as to whether Plaintiff exhausted all available remedies. [Doc. 50-1 at 18–23.] Catherine James ("James"), grievance coordinator at LCI, averred she did not process grievance 2532-09 because Plaintiff attempted to grieve events surrounding the use of force against him on August 28, 2009 before resolution of a disciplinary charge against him resulting from those events. [Doc. 48-11 ¶¶ 1–2.] James averred she "clearly instructed [Plaintiff] on grievance number 2532-09 that he could file a grievance after the conclusion of his disciplinary hearing. [Plaintiff] did not file a grievance." [*Id.* ¶ 3; *see also* Doc. 48-8 ¶ 7 (stating Plaintiff did not utilize the administrative remedies available to him regarding the August 28, 2009 use of force).] Moreover, James averred Plaintiff has filed more than ten grievances since 2004; Plaintiff filed three grievances in September 2009, raising three different claims. [Doc. 48-11 ¶ 4; *see also* Doc. 48-12 (Plaintiff's grievance summary).]

James further averred Plaintiff never asked for or sought assistance from her to help him grieve the August 28, 2009 incident. [Doc. 48-11 ¶ 5.]

While Plaintiff argues the onus was on LCI officials to provide him assistance without his asking for assistance in filing a grievance [Doc. 50-1 at 17], the law is to the contrary, *see Billups*, 2010 WL 4386949, at *3. Plaintiff has failed to demonstrate he asked for and was refused help in filing a grievance concerning the August 28, 2009 incident.[3] Further, Plaintiff averred he "was told by the head grievance officer, a female, that my grievance [concerning the August 28, 2009 incident] was done" [Doc. 50-2 ¶ 45] and that the inmate who helped him write the grievance told Plaintiff he had finished the grievance process when he got it back [*id.* ¶ 55]. However, as noted above, James averred she told Plaintiff he could file a grievance after his disciplinary charge was resolved [Doc. 48-11 ¶ 3], and the response printed on the grievance states Plaintiff's complaint was being closed without a decision on its merits because the complaint was non-grievable as the issue had resulted in a disciplinary charge but that Plaintiff could submit a grievance after he had been to his disciplinary hearing [Doc. 48-9]. Moreover, Plaintiff's grievance record indicates he was aware the grievance process was a two-step process [*see* Doc. 48-12 (indicating Plaintiff filed four Step 2 grievances between December 2004 and December 2009)], yet Plaintiff filed only a Step 1 grievance with respect to the August 28, 2009 incident. Thus, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether he understood that his Step 1 grievance exhausted his administrative remedies.     Consequently, the Court concludes Plaintiff has failed to demonstrate a genuine issue of material fact remains

---

[3] The Court notes Plaintiff has failed to indicate whether he received assistance from SCDC personnel in filing his other grievances.

with respect to exhaustion of his claims and Johnson's motion for summary judgment should be granted based on Plaintiff's failure to exhaust.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Johnson's motion for summary judgment be GRANTED and Defendants Margrett Bell, Warden Anthony Padula, and Director John Ozmint be DISMISSED from this action.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

February 23, 2012
Greenville, South Carolina